ORIGINAL

Approved: _____
THOMAS JOHN WRIGHT / PETER J. DAVIS
Assistant United States Attorneys

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
          United States Magistrate Judge
          Southern District of New York

**22 MAG 1739**

- - - - - - - - - - - - - - - - - x
                                  :  **COMPLAINT**
                                  :
UNITED STATES OF AMERICA          :  Violations of
                                  :  18 U.S.C. §§ 922(g),
        - v. -                    :  924(c), and 2; and
                                  :  21 U.S.C. §§ 812,
GODDES EARL,                      :  841(a)(1), 841(b)(1)(A),
   a/k/a "Asia,"                  :  841(b)(1)(B), and 846
JAVON HOSKINS,                    :
   a/k/a "Twin,"                  :  COUNTY OF OFFENSE:
NATHAN SMITH,                     :  BRONX
   a/k/a "Youngin,"               :
   a/k/a "600,"                   :
   a/k/a "Six,"                   :
JOHN LABELLA,                     :
ALI DOBY, and                     :
ISHMAEL WILLIAMS,                 :
                                  :
              Defendants.         :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN STOLTENBORG, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE

1.  On or about February 17, 2022, in the Southern District of New York, ISHMAEL WILLIAMS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, an SR .22-caliber Ruger semi-automatic, and the firearm was in and affecting interstate and foreign commerce.

(Title 18, United States Code,
Sections 922(g)(1) and 2.)

**COUNT TWO**

2.      On or about February 17, 2022, in the Southern District of New York, NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a Model 20 .25-caliber Baretta semi-automatic pistol, and the firearm was in and affecting interstate and foreign commerce.

(Title 18, United States Code,
Sections 922(g)(1) and 2.)

**COUNT THREE**

3.      From at least in or about October 2020 up to and including in or about February 2022, in the Southern District of New York and elsewhere, GODDESS EARL, a/k/a "Asia," JAVON HOSKINS, a/k/a "Twin," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," JOHN LABELLA, and ALI DOBY, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

4.      It was a part and an object of the conspiracy that GODDESS EARL, a/k/a "Asia," JAVON HOSKINS, a/k/a "Twin," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," JOHN LABELLA, and ALI DOBY, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

5.      The controlled substances that GODDESS EARL, a/k/a "Asia," JAVON HOSKINS, a/k/a "Twin," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," JOHN LABELLA, and ALI DOBY, the defendants, conspired to distribute and possess with intent to distribute were 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of Title 21, United States Code, Section 841(b)(1)(A), and 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

**COUNT FOUR**

6.      From at least in or about October 2020 up to and including in or about February 2022, in the Southern District of New York, GODDESS EARL, a/k/a "Asia," JAVON HOSKINS, a/k/a "Twin," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," and JOHN LABELLA, the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Three of this Indictment, knowingly did use and carry firearms, and in furtherance of such crime, did possess firearms, and did aid and abet the same.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i) and 2.)

7.      The bases for my knowledge and for the foregoing charge are, in part, described in the following paragraphs.

8.      I have served for approximately 15 years in the NYPD, where I am currently assigned to the Gun Violence Suppression Division, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers and other individuals, as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and part, except where otherwise indicated.

9.      Based on my conversations with other law enforcement officers, and my review of reports and other records generated from their investigation, including an interview with a police officer in the NYPD's 52nd Precinct ("PO-1"), I have learned, among others things, the following, in substance and in part:

   a.   On or about the evening of February 17, 2022, PO-1 and other police officers were patrolling on East 194th Street between Briggs Avenue and Valentine Avenue in the Bronx, New York when PO-1 observed two males ("Male-1" and "Male-2") walking eastbound on the sidewalk on the south side of East 194th Street. At the time, PO-1 and his fellow police officers were in uniform and driving in an unmarked police car.

b. PO-1 saw that Male-1 was wearing a black hooded sweatshirt and had his right hand in the right pocket of his sweatshirt. As the unmarked car drove closer to Male-1 and Male-2, PO-1 saw Male-1 and Male-2 both look at the unmarked car, at which point they split up, with Male-2 continuing to walk eastbound and Male-1 changing direction rapidly, initially walking briskly westbound before crossing over East 194th Street a short distance in front of the unmarked car and proceeding westbound, now on the sidewalk on the north side of East 194th Street. During this time, Male-1 continued to hold his hand in his right sweatshirt pocket and began to look repeatedly over his shoulder at the unmarked car.

c. As Male-1 reached the intersection of East 194th Street and Valentine Avenue, PO-1 saw him turn onto Valentine Avenue and cross over Valentine Avenue, walking still briskly and now northbound on the sidewalk on the west side of Valentine Avenue. As the unmarked car, which PO-1 and his fellow police officers had turned onto Valentine Avenue, pulled up alongside Male-1, PO-1 opened a window of the unmarked car and stated, in substance and in part, "police." At this time, PO-1 could see what appeared to be a heavily weighted object in Male-1's right sweatshirt pocket, where Male-1's right hand remained. After PO-1 said, "police," Male-1 immediately took off at a dead sprint, running northbound along the sidewalk to the front of 2685 Valentine Avenue, racing into its front entrance. As PO-1, who had gotten out of the unmarked car and chased after Male-1 together with others of his fellow police officers, succeeded in catching up to Male-1, PO-1 heard Male-1 shout, in substance and in part, as he approached the front door of 2685 Valentine Avenue, "open the door, open the door." At this point an individual standing inside the front door did open and attempted then to close the door after admitting Male-1. As PO-1 nonetheless succeeded in gaining entrance to 2685 Valentine Avenue before the front door could be closed upon him, PO-1 followed Male-1, who was now only a short distance in front of PO-1, turn right and race up a short flight of steps inside the public area of the building. At this time, PO-1 saw what appeared to be the butt of a firearm sticking out from the right sweatshirt pocket of Male-1, which firearm Male-1 was holding with his right hand. Reaching a landing at the top of the short flight of steps, PO-1 saw Male-1 enter Apartment 1E (the "Apartment") whose door then slammed shut.

d. As PO-1 and his fellow police officers arrived at the door to the Apartment in hot pursuit, in short order they succeeded in kicking in that door and entering the Apartment, where they found inside multiple individuals, including Male-1.

e. In particular, in searching for Male-1, PO-1 entered a bathroom where he saw an SR .22-caliber Ruger semi-automatic ("Firearm-1") in a bathtub and then saw Male-1 hiding behind the door to the bathroom. A later examination of Firearm-1 confirmed that Firearm-1 was loaded with nine .22-caliber cartridges in the magazine.

f. In the course of entering the Apartment, encountering and detaining multiple individuals, including Male-1, and performing a protective sweep of the Apartment, PO-1 and his fellow police officers saw multiple additional items of contraband. In particular, PO-1 and his fellow police officers saw in a bedroom (the "Bedroom") another firearm, a Model 20 .25-caliber Baretta semi-automatic pistol ("Firearm-2"), which was sitting in plain view of the three occupants of the Bedroom on top of a pile of assorted clothing and other items. A later examination of Firearm-2 confirmed that Firearm-2 was loaded with seven .25-caliber cartridges in the magazine and one cartridge in the chamber. In addition to Firearm-2, PO-1 and his fellow police officers also saw empty glassines and hypodermic needles in the Bedroom. Elsewhere in the Apartment, in a common room (the "Common Room"), PO-1 and his fellow police officers saw additional glassines, hypodermic needles, and rubber bands of a shape and size consistent with those used, based on their training and experience, in the packaging of drugs. In addition, in multiple places in the Apartment, PO-1 and his fellow police officers saw large quantities of United States currency organized in stacks of bills.

g. Having identified this contraband, PO-1 and his fellow police officers froze the Apartment, in anticipation of acquiring a warrant to search the Apartment, and transported Male-1, who was identified as ISHMAEL WILLIAMS, the defendant, and the other individuals detained in the Apartment to the NYPD's 52nd Precinct, pending their further investigation.

10. Based on my conversations with other police officers who were present inside the Apartment after the detained subjects were transported away from it and most of the responding police officers had similarly departed, I have learned that another male, later identified as JAVON HOSKINS, a/k/a "Twin," attempted to enter the Bedroom of the Apartment by climbing inside it from the exterior fire escape. Upon entering the Bedroom, HOSKINS was stopped, detained, and transported back to the NYPD's 52nd Precinct.

11. Thereafter, on or about February 18, 2022, I arrived at the NYPD's 52nd Precinct and familiarized myself with the events described in the preceding paragraphs through

5

conversations with PO-1 and his fellow police officers.  Based on my involvement in a separate investigation involving drug trafficking inside and in the vicinity of 2685 Valentine Avenue, including the Apartment, I am familiar with multiple individuals whom the police officers encountered inside the Apartment, including ALI DOBY, a defendant who was first encountered in the Common Room, GODDES EARL, a/k/a "Asia," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," and JOHN LABELLA, who were encountered in the Bedroom, as well as JAVON HOSKINS, a/k/a "Twin," who attempted to enter the Apartment through the fire escape leading to the Bedroom after law enforcement froze the Apartment.  Further, I know, based on my involvement in this investigation and in particular my review of video recordings obtained from body-worn cameras, that multiple confidential sources have conducted controlled transactions inside of 2685 Valentine Avenue between in or about October 2020 and February 2022 at the direction of the NYPD, which in total has resulted in the purchase of over approximately 200 grams of crack cocaine directly from co-conspirators, including defendants DOBY, EARL, SMITH, LABELLA, and HOSKINS.  During that same time period, physical surveillance of this location has confirmed what appears to be a daily crack cocaine drug market with large retail and user customer base.  Further, each one of DOBY, EARL, SMITH, LABELLA, and HOSKINS have participated together with one or more other co-conspirators, including each other in certain cases, to sell laboratory-tested positive crack cocaine, in which on one or more occasions their faces are clearly depicted and recognizable.  In the past one week, for example, SMITH and HOSKINS acted in concert to sell a confidential source a quantity of more than 40 zips of crack from the Apartment.  On at least one earlier occasion, the video recording obtained from a confidential source's body-worn camera depicts HOSKINS participating in a controlled substance transaction at the same time as HOSKINS openly possesses a firearm.

        12.  Following the events described in the preceding paragraphs, police officers obtained a warrant to search the Apartment, which the Honorable James L. Cott, Chief United States Magistrate for the Southern District of New York, issued on or about February 18, 2022.  The resulting search led to the seizure of further contraband inside a deadbolt-locked closet inside of the Apartment that is located on a hallway opposite from the door to the Bedroom (the "Closet").  Inside the Closet, police officers found a plastic bag containing approximately over 50 grams of a beige powder (which weight is estimated based on the plastic bag being placed on a scale), which was packaged into individual glassines for further distribution, as well as a

magazine for a semi-automatic pistol containing six .40-caliber cartridges.

13. Based on my training and experience in the identification of drugs, my experience making drug-related arrests in the vicinity of Valentine Avenue, my broader familiarity with the results of laboratory testing of controlled substances seized in the vicinity of Valentine Avenue, the packaging of the beige powder, and my debriefing of confidential informants responsible for providing information concerning the vicinity of Valentine Avenue, I believe that that the beige powder seized in the Closet consists of mixtures and substances containing a detectable amount of fentanyl or both fentanyl and heroin.

14. Based on my review of criminal history records, I have learned that on or about January 6, 2022, ISHMAEL WILLIAMS, the defendant, was convicted in Bronx County Supreme Court after a plea of guilty to Attempted Murder in violation of New York Penal Law §§ 110.00 and 125.25(1), which is a Class B Felony punishable by more a term of imprisonment exceeding one year. I have also learned that, on or about April 12, 2021, NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," the defendant, was convicted in Bronx County Supreme Court after a plea of guilty to Criminal Possession of a Firearm in violation of New York Penal Law § 265.01-b, which is a Class E Felony, punishable by more a term of imprisonment exceeding one year. In both cases, WILLIAMS and SMITH were released pending their sentencings, which have yet to occur. Based on my training and experience, I know that it is a standard practice in change of plea proceedings in Bronx County Supreme Court, particularly where the defendant is released pending sentence, for the court to advise the defendant of the maximum statutory determinate or indeterminate sentence that could be imposed upon the defendant for the conviction should the defendant, for example, violate any conditions required to earn the promised sentence, such as an arrest.

15. As part of my investigation of this matter, I have received information from a special agent of the Alcohol, Tobacco, Firearms, and Explosives Bureau ("ATF"), who, based on the special agent's expertise in the manufacturing of firearms and analysis of documents relating to the firearms recovered in the Apartment, including multiple photographs of Firearm-1 and Firearm-2, concluded that both Firearm-1 and Firearm-2 were not manufactured in the State of New York.

WHEREFORE, deponent respectfully requests that GODDESS EARL, a/k/a "Asia," JAVON HOSKINS, a/k/a "Twin," NATHAN SMITH, a/k/a "Youngin," a/k/a "600," a/k/a "Six," JOHN LABELLA, ALI DOBY, and ISHMAEL WILLIAMS, the defendants, be imprisoned or bailed, as the case may be.

JOHN STOLTENBORG
Detective
New York City Police Department

Sworn to by reliable electronic means this 19th day of February, 2022

THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York